CABINET REALTY, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF MANSFIELD ET AL.
(6461)

SPALLONE, DALY and FOTI, Js.

Argued November 7, 1988—decision released January 17, 1989

*Steven R. Humphrey,* with whom, on the brief, was *Ann D. Dexter,* for the appellant (plaintiff).

*Andrew J. O'Keefe,* with whom, on the brief, was *Maureen Sullivan Dinnan,* for the appellee (named defendant et al.).

*James J. Szerejko,* with whom, on the brief, was *John B. Farley,* for the appellees (Linwood A. Walters et al.).

DALY, J. The plaintiff appeals from the judgment rendered, after a jury trial, in favor of the defendants[1] on its substituted complaint. The plaintiff claims that the trial court erred (1) in denying its motion to reinstate the first count of its revised complaint, (2) in allowing certain testimony into evidence, (3) in refusing to charge the jury that the commission lacked certain authority to act as it did, and (4) in its instructions to the jury. We find no error.

---

[1] The defendants include (1) individual members of the Mansfield planning and zoning commission as of November, 1983, (2) the town of Mansfield and the planning and zoning commission, and (3) the town's zoning enforcement officer and zoning agent.

The following facts are pertinent to this appeal. The plaintiff was the developer of a 240 unit condominium project in Mansfield known as Freedom Greene. The plaintiff planned to build the project in five phases. The site plan approved by the defendant commission applied to all 240 units of the project, although construction was to proceed in different phases. As the development proceeded from phase to phase, there would be no need for the plaintiff to obtain further approval from the defendant commission as long as construction proceeded in accordance with the approved site plan. Any modification, however, required the commission's approval. The first phase, known as Patriots Square, was constructed during 1981 and 1982. When construction was finished, the defendant Carl Panciera, the deputy building inspector and zoning enforcement officer for the town, issued certificates of zoning compliance. The Patriots Square units were subsequently sold and occupied.

The plans for the second phase, known as Constitution Square, envisioned units that would be 10 percent smaller than those in Patriots Square. The town planner advised the plaintiff that the planned reduction would not require site plan approval. In 1983, the plaintiff began construction of Constitution Square. When the seventeen units were nearly completed, Panciera issued certificates of zoning compliance for three units, which were then sold and occupied.

In late October, 1983, the defendant commission members made a field inspection trip to Freedom Greene because of community concerns that Constitution Square was substantially different from Patriots Square. The inspection revealed variations between the actual construction and the approved site plan. On November 2, 1983, the defendant commission notified the plaintiff by letter that, due to the concerns of noncompliance raised by their visit, the commis-

sion had placed the issue of Constitution Square on its November 7, 1983 agenda and would take appropriate action at such time. At that meeting, which the plaintiff did not attend, the commission directed Panciera to prevent the occupancy of the remaining Constitution Square units by recording a notice of the commission's conclusions on the town land records. This action was taken pursuant to the advice of Thomas Byrne, an attorney specializing in the area of zoning law. The variations from the site plan were listed in the notice, which was recorded on the Mansfield land records on November 8, 1983.

The plaintiff then filed this action and also sought and obtained a preliminary injunction ordering the defendant commission to remove the notice from the land records. At that time, however, the court refused to order the town to issue certificates of occupancy. Instead, the court directed the plaintiff to appeal to the Mansfield zoning board of appeals. The board of appeals upheld the withholding of the certificates of occupancy, and the plaintiff then appealed to the Superior Court. That appeal was settled in early 1985, whereby the plaintiff agreed to make certain modifications to the building and the defendant commission agreed to issue the certificates of occupancy as the changes were completed.

This case came to trial in July, 1987, on a three count substituted complaint that alleged tortious interference with business relations, unjust taking without compensation and slander of title. This appeal ensued after a judgment for the defendants.

I

The plaintiff's first claim is that the trial court erred in refusing to reinstate a count of its complaint. In November, 1984, the plaintiff filed an eight count revised complaint. The first count of that complaint

alleged a violation of 42 U.S.C. § 1983. The plaintiff specifically alleged that the actions of the defendant commission and its agents were taken under color of state law and deprived the plaintiff of an interest in its property in violation of its right to due process under the fifth and fourteenth amendments to the United States constitution.

In October, 1985, the trial court granted the defendants' motion to strike the first count on the ground that a single incident did not constitute an official policy. In July, 1987, the plaintiff filed a motion to reinstate the first count based on intervening federal court decisions.[2] That motion was denied by the trial court.

"A trial court has wide discretion in granting or denying amendments to the pleadings and rarely will this court overturn the decision of the trial court." *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.*, 195 Conn. 60, 67, 485 A.2d 1296 (1985). "Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment." *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 302–303, 460 A.2d 488 (1983).

The motion to reinstate was filed on the brink of trial. Moreover, the federal cases relied on by the plaintiff were decided sixteen and eight months, respectively, *prior* to plaintiff's filing of the motion to reinstate. Under these circumstances, we cannot say the trial court abused its discretion in denying the motion to reinstate.

## II

The plaintiff next challenges the trial court's decision to allow certain testimony into evidence. On July 14,

---

[2] See *Pembauer* v. *Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); *Sullivan* v. *Salem*, 805 F.2d 81 (2d Cir. 1986).

1987, the trial court granted the plaintiff's motion in limine. That motion directed the defendants to refrain from making any references in the jury's presence to the plaintiff's withdrawal of its administrative appeal against the Mansfield zoning board of appeals, to any negotiations or correspondence involved in the settlement of the appeal, or to any construction, repairs or alterations performed by the plaintiff in connection with the agreement to withdraw the appeal.

One of the plaintiff's witnesses was Raymond Schneider, a principal of Cabinet Realty. During direct examination, Schneider testified about the final issuance in January, 1985, of the certificates of occupancy for Constitution Square and that, on behalf of Cabinet Realty, he had taken an appeal to the town zoning board of appeals. On cross-examination, the trial court permitted the defendants to inquire, over the plaintiff's objections, about the changes which the plaintiff made to Constitution Square in order to obtain the certificate of occupancy.

The plaintiff has characterized this claim of error as a midtrial ruling that reversed the court's earlier ruling on the motion in limine, and thereby prejudiced the plaintiff. We do not agree.

Cross-examination is permitted to explain any of a witness's direct testimony. *State* v. *Sharpe,* 195 Conn. 651, 657, 491 A.2d 345 (1985). A party who initiates discussion of an issue, whether on direct or cross-examination, is said to have "opened the door" to inquiry by the opposing party, and cannot later object when the opposing party so questions the witness. *State* v. *Graham,* 200 Conn. 9, 13, 509 A.2d 493 (1986).

The trial court did not err in permitting the challenged line of inquiry during the cross-examination of Schneider because the plaintiff "opened the door" by eliciting the testimony that it had taken an appeal to

the zoning board of appeals. Moreover, the plaintiff was not prejudiced in any way by the introduction of the testimony. The plaintiff was free, on redirect examination, to rehabilitate its witness and elicit testimony as to why the plaintiff made the changes it did. This claim is meritless.

## III

The plaintiff's next claim concerns the trial court's failure to charge the jury, despite its request, that the commission exceeded its statutory authority by recording the notice of noncompliance on the land records. The trial court charged the jury on the provisions of General Statutes § 8-12,[3] which sets forth the procedures to be used by a zoning commission when its regulations have been violated. The statute states that remedies for zoning violations include starting an action or proceeding to prevent the occupancy of the structure *in addition to other remedies.* General Statutes § 8-12. (Emphasis added.)

The use of land records has been recognized as a device that municipality can use to enforce its zoning regulations. See T. Tondro, Connecticut Land Use Regulation (1979) p. 212.[4] The purpose of the recording system is to alert prospective purchasers to the status of the property and to provide security in land

---

[3] General Statutes § 8-12 provides in pertinent part: "If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. . . ."

[4] Other methods of enforcement include certificates of occupancy, building and zoning permits and performance bonds. T. Tondro, Connecticut Land Use Regulation (1979) p. 213.

transactions. *Sadd* v. *Heim*, 143 Conn. 582, 585, 124 A.2d 522 (1956). Although the statutes do not define "other remedies," as set forth in § 8-12, we can turn to the common usage of the words for guidance as to the meaning. See General Statutes § 1-1 (a). "Remedy" is defined as "something that corrects or counteracts an evil"; "the relief that may be given by a court for a wrong"; and "to give legal redress to." Webster, Third New International Dictionary. We conclude that a municipality may, under the authority of § 8-12, direct its zoning enforcement officer to record a notice on the land records as a means by which to enforce compliance with its zoning regulations. Such a notice on the land records will alert prospective purchasers to zoning problems affecting the property and may discourage purchasers from buying property when a builder has not complied with the zoning regulations.[5] Recording a notice on the land records is a legitimate remedy under § 8-12 available to a municipality as an enforcement mechanism for its zoning regulations. We conclude, therefore, that the trial court did not err in refusing to charge the jury that the zoning commission lacked authority to record the notice of noncompliance.

IV

The plaintiff raises several claims of error relative to the trial court's instruction to the jury. Our standard of review applies with equal force to each claim. " ' "To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. . . . In considering the charge as a whole we eschew critical dissection . . . thereby not

[5] We find it persuasive that General Statutes § 8-26c authorizes a planning commission to file on the land records a notice of the date after which its approval of a subdivision plan automatically expires unless all work is completed. The statute's purpose is to enforce the land use regulations of the municipality. See T. Tondro, Connecticut Land Use Regulation (1979) p. 213 n.4.

passing upon the instructions attacked in 'artificial isolation' from the whole charge." ' " (Citations omitted.) *State* v. *Reddick,* 15 Conn. App. 342, 351, 545 A.2d 1109 (1988), quoting *State* v. *Marshall,* 3 Conn. App. 126, 129, 485 A.2d 930 (1985). "Jury instructions need 'not be exhaustive, perfect or technically accurate,' as long as they are 'correct in law, adapted to the issues and sufficient for the guidance of the jury.' " (Citation omitted.) *State* v. *Green,* 11 Conn. App. 575, 580, 528 A.2d 855, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987). Our review of the transcript indicates that the court's charge, read as a whole, was sufficient to guide the jury to correct a verdict.

There is no error.

In this opinion the other judges concurred.