[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:MOTION FOR CLARIFICATION AND APPROVAL OF COMPLIANCE PLAN
The defendant's motion for clarification is granted. The motion for approval of the compliance plan is denied. For purposes of clarity, the court orders the defendant to complete CT Page 1978 the following by March 6, 1998:
1. Write to Richard Barlow of the DEP requesting written confirmation that no further application is required for groundwater discharge for the disruption. If further application is required, the defendant is ordered to comply with the DEP request immediately upon receipt of notification. If the DEP request will take the defendant beyond the present day set for compliance, the defendant is to report to the court and provide a target date not to exceed thirty days from March 6, 1998 thereby giving the defendant a deadline of April 5, 1998. This extension applies only to the groundwater discharge permit application.
Subsequent to the pending motion for clarification, the defendant wrote the requisite letter seeking clarification of whether a new groundwater discharge application was required in connection with the disruption of waste at the New Milford landfill. Michael Harder, the director of The Permitting, Enforcement and Remediation Division of the Water Management Bureau of the DEP responded to the request of Waste Management. The pertinent aspect of Mr. Harder's response letter is as follows: "The Commissioner subsequently issued Consent Order No. WC5148 on August 8, 1994, modified on October 6, 1994, which required WMCT to close the landfill within a specified time frame and take the necessary corrective measures to bring the landfill into compliance with the State's Water Quality Standards. This consent order is the legal mechanism by which the Department would ensure protection of ground water and surface water quality. WMCT may be able to formulate a disruption plan that would result in no discharge. However, to the extent WMCT's landfill disruption results in a discharge to ground water or surface water, it too would be unpermittable . . . Notwithstanding the Department's historical position on discharge at the site, we are prepared to review any application made by WMCT relating to disruption activities at the New Milford Landfill. We suggest updating the aforementioned application submitted on April 26, 1990 to reflect current conditions and the proposed disruption of the landfill. Upon receipt of the application, the Department will conduct a review and take action as appropriate." The defendant now asks the court for "clarification that submission of this updated information to reflect the disruption activities in accordance with the DEP's most recent letter, rather than a new groundwater discharge application, will satisfy its obligations under this Court's January 6, 1998 Memorandum of Decision." (Defendant's February CT Page 1979 16, 1998 supplemental motion for clarification and approval of compliance plan, p. 2.) The court does not understand what is unclear to the defendant. This court specifically ordered the defendant to file all necessary permits. There is nothing in the letter from the DEP that lacks clarity. The defendant should proceed as outlined by the DEP and must await further action by the plaintiff demanding enforcement of this court's January 6, 1998 orders for a determination of whether it is in compliance.
The defendant is represented by highly skilled counsel. It is not the function of this court to approve the defendant's plan of action and the court specifically refrains from granting approval of the defendant's compliance plan. To do so would close the door in the plaintiff's face in the event that further information is sought by any agency the defendant was ordered to file applications with, including those listed in the clarification aspect of this memorandum of decision. This, the court will not do.
2. As to the DEP solid waste permit, the court does not require further submissions at this time. If, however, the DEP requests further information, the defendant is to comply with the request within 30 days from the date the DEP makes a request. As this court clearly stated in its memorandum of decision on the motion for contempt and as set forth in the notice letter from David Nash of the DEP, the notice letter does not "preclude the Department from requesting additional information concerning [the] application. It is not uncommon for questions to arise during technical review which will require additional information to resolve. The Department will make every effort to work with you to resolve such issues. Your prompt response to any requests for additional information will expedite the processing of your application." (Letter dated November 14, 1997 addressed to Mr. Spooner of Waste Management from David Nash of the DEP.) In short, this court cannot determine that further submissions are unnecessary. The DEP is apparently satisfied with the submissions at least to the extent that no further information is presently required but Waste Management is forewarned that dilatory action in the future will not be tolerated.
3. Register with the DEP the construction activities associated with the waste excavation and complete a storm water pollution prevention plan.
4. File an application with the New Milford Zoning Commission CT Page 1980 for special permits for waste excavation and filling and file with the New Milford Zoning Board of Appeals an application for a variance of regulations that the disruption may not satisfy. Additionally, the defendant is ordered to plan an alternative means of complying with the removal and closure of the New Milford site in the event that the New Milford Zoning Board or Board of Appeals denies permits for redistribution of the existing waste. Waste Management is already on notice that the Zoning Board will not approve a redistribution of the existing waste yet it persists in staying on the same course. It is the opinion of this court that Waste Management's persistence is to serve itself in presenting an unsatisfactory solution to the problem. As this court has previously stated, the defendant has failed to submit alternative avenues of resolving the landfill height problem. Instead, it seeks to redistribute the waste thereby increasing the width and depth and decreasing the cost of removal.
5. Apply to the New Milford Inland Wetlands Commission for a permit to conduct regulated activities in regulated areas adjacent to the watercourse.
6. Apply to the DEP for a variance of those portions of the air quality regulations that the September 1996 disruption plan is expected to violate.
7. File an odor control plan with the New York Department of Environmental Conservation satisfying the second condition of the DEC's January 14, 1998 approval.
8. File a special waste authorization with the Commonwealth of Pennsylvania to provide a back-up off-site disposal.
The defendant is further ordered to keep this court and the plaintiff informed as each of the above steps are completed.
As to the defendant's motion for approval of its compliance plan, the motion is denied. As this court stated on the record during oral argument of this motion, it is not the function of this court to micro manage this case. This court retained jurisdiction of this case not for the purposes of approving every action taken but instead for the purposes of fashioning a remedy in the event that the height of the landfill cannot be reduced due to environmental hazards. The court looked to the DEP for assistance in the management of closing the facility for the CT Page 1981 simple reason that the court lacks the environmental expertise necessary to ensure the facility is shut down within environmentally safe bounds. The DEP possesses the necessary knowledge and ability to approve closure of the facility and the court will fashion an alternative remedy in the event the DEP finds the defendant's closure plan unsound and denies the application for removal of the waste.
"While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree."Zamstein v. Marvasti, 240 Conn. 549, 559 n. 5, 692 A.2d 781 (1997);Waters v. Autuori, 236 Conn. 820, 828, 676 A.2d 357 (1996). The case presently before this court is a prime example of the principle that "[e]very injury has ramifying consequences, like the ripplings of waters, without end." Id. This court has attempted "to limit the legal consequences of the defendant's wrongs to a controllable degree" but the defendant, by its own action, prolongs the inevitable.
"It is said that every wrong has its remedy[.]" (Internal quotation marks omitted.) Sterner v. Saugatuck Harbor Yacht Club,Inc., 188 Conn. 531, 542, 450 A.2d 369 (1982) (Healey, J. concurring). The Supreme Court's maxim "for every wrong, there is a remedy" applies to this case. Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 195, 592 A.2d 912 (1991). "An injury is a wrong; and for the redress of every wrong there is a remedy: a wrong is a violation of one's right; and for the vindication of every right there is a remedy. Want of right and want of remedy are justly said to be reciprocal." Dimmock v. New London,157 Conn. 9, 16, 245 A.2d 569 (1968); Avery v. Spicer, 90 Conn. 576,584, 98 A. 135 (1916). "Remedy is defined as something that corrects or counteracts an evil; the relief that may be given by a court for a wrong; and to give legal redress to. Webster, Third New International Dictionary." (Internal quotation marks omitted.)Cabinet Realty v. Planning Zoning Comm., 17 Conn. App. 344, 351,552 A.2d 1218, cert. denied, 210 Conn. 813, 556 A.2d 610 (1989).
"In this State, the principle of the common law that the courts afford a remedy for every wrong, is applied. When necessity arises for the intervention of the courts and there is no procedure of conventional character available to serve the exigency, the CT Page 1982 judicial function will not on that account, be frustrated — it will take cognizance of the wrong and prescribe a remedy appropriate and effective to enjoin its continuance or redress its consequences.Osborn v. Zoning Board, 11 Conn. Sup. 489, 517, ___ A.2d ___ (1943).
In the event that the remedy fashioned by this court over two years ago cannot be accomplished, the court is prepared to fashion an alternative remedy in the form of damages both compensatory and punitive. The defendant articulated the approximate cost of closing the New Milford facility during the proceedings two years ago. That cost was estimated to be approximately $103 to $105 million. It is not inconceivable to this court that an award of damages to the Town of New Milford would be equal to, if not greater than, the cost of cleanup. The assessment of damages however, awaits another day in the event of disapproval of the disruption plan.
In summary, the defendant's motion for clarification is granted. The motion for approval of the proposed compliance plan, however, is denied.
BY THE COURT
Gill, J.