DOMINIC CACIOPOLI *v.* TODD HOWELL ET AL.
(AC 31034)

DiPentima, C. J., and Robinson and Hennessy, Js.

Argued April 20—officially released October 5, 2010

*John R. Williams*, for the appellants (defendants).

*David S. Doyle*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants, Todd Howell and several businesses with which he is affiliated,[1] appeal from the order of the trial court granting the application for a prejudgment remedy filed by the plaintiff, Dominic Caciopoli, an attorney licensed to practice law in Connecticut. On appeal, the defendants claim that the court improperly (1) granted the plaintiff's application for a prejudgment remedy because the debt owed to the

---

[1] The other defendants in this action, all businesses with which Howell is affiliated, are Winter Ridge, LLP, Construction Techniques by WRN, Inc., Majestic Mulches, Soils and Stones, LLP, DaVinci Development Properties, LLC, and DaVinci Development, LLC.

plaintiff was pursuant to a client fee structure that violated rule 1.5 of the Rules of Professional Conduct and, therefore, public policy, and (2) determined the amount of the prejudgment remedy. The defendants have provided an inadequate record to review their claims, and, accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are necessary to the resolution of the defendants' appeal. In 2003, Howell contacted the plaintiff regarding legal services for Howell's numerous businesses. Howell and the plaintiff met multiple times to discuss the type of legal representation that Howell would need, how much work it would require the plaintiff to complete and what the compensation would be. After the meetings, Howell decided that he wanted the plaintiff to represent him and his businesses, and the parties came to an agreement on how many hours likely would be required and an amount for compensation. The agreement, however, was never put into writing. At that time, the parties expected that the representation would require approximately three hours of work a week. The representation commenced, but the attorney-client relationship started to unravel when Howell showed up late for meetings and forgot to provide documentation necessary for litigation. The plaintiff then terminated his attorney-client relationship with Howell.

In the spring of 2005, Howell contacted the plaintiff again to apologize for his previous behavior and because he wanted the plaintiff to resume representing him. The two reassessed Howell's legal needs and came to an agreement that the plaintiff would have to spend approximately five hours a week working on legal matters for him at a rate of $8000 a month. Again, the parties did not create a written contract regarding the new agreement. Over the next three months, the plaintiff's legal work increased in volume and complexity, and the parties increased the monthly fee to $10,000.

Howell paid the plaintiff the fee monthly for five months, but the plaintiff testified that receipt and deposit of the payments was difficult.[2]

The legal representation continued to increase in volume, including, but not limited to, matters involving the Internal Revenue Service, unemployment, vandalized property, foreclosure and lender liability. From 2005 through January, 2009, the plaintiff worked twenty to twenty-five hours a week on Howell's legal matters. In September, 2008, the plaintiff was negotiating two settlements for Howell that would have entitled Howell to $3.2 million. The parties reached an agreement that the plaintiff would receive 45 percent of that amount, approximately $1.4 million, which was equal to the then current debt the plaintiff alleged that he was owed. The plaintiff testified that this agreement was handwritten. It was not, however, signed or produced at the prejudgment remedy hearing.

On March 6, 2009, the plaintiff filed an application for a prejudgment remedy without a hearing and an accompanying affidavit to secure the sum of $1.4 million. On March 12, 2009, a hearing was ordered on the application for a prejudgment remedy for March 23, 2009. After a hearing on April 3, 2009, the court found that an attorney-client relationship existed between the parties and granted the prejudgment remedy in the amount of $1.065 million. This appeal followed.

I

The defendants first claim that the court improperly granted the application for a prejudgment remedy because there was no written fee agreement and the oral agreement reached by the parties violates rule 1.5

---

[2] The plaintiff testified that "[b]y difficult, I mean, I would get a check. I'd get the check and try to deposit it, wasn't able to deposit it, had to give it back to him and then he'd go get me another check or get me a bank check, and we had a great deal of difficulty for that four or five month period."

of the Rules of Professional Conduct[3] and, consequently, public policy. Specifically, the defendants claim that a contract that violates public policy should not be enforced. The defendants argue that this oral fee agreement was "in part a contingency fee agreement, in part a monthly flat-fee agreement and in part a case specific flat fee agreement," and that all aspects of it violate rule 1.5 (b) of the Rules of Professional Conduct.

"[A] prejudgment attachment is a provisional remedy afforded to a claimant to secure satisfaction of a judgment in the future." *Shawmut Bank* v. *Brooks Development Corp.*, 46 Conn. App. 399, 410, 699 A.2d 283 (1997). The trial court may grant a prejudgment remedy upon a finding that "there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . ." General Statutes § 52-278d (a) (1). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 137, 943 A.2d 406 (2008).

The defendants have not provided this court with an adequate record to review this claim. Our Supreme Court recently has reiterated the fundamental point

---

[3] Rule 1.5 (b) of the Rules of Professional Conduct provides in relevant part: "The scope of the representation, the basis or rate of the fee and expenses for which the client will be responsible, shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client in writing before the fees or expenses to be billed at higher rates are actually incurred. . . ."

that "[i]t is incumbent upon the [appellant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative." (Internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 138, 989 A.2d 588 (2010).

In the present case, we cannot determine from the record what legal theory the court applied in finding that a prejudgment remedy was appropriate due to the plaintiff's likelihood of prevailing on the merits of his claim, nor can we determine what additional facts the court found.[4] The plain language of rule 1.5 of the Rules of Professional Conduct allows for an exception to the requirement that a fee agreement be in writing when an attorney is charging a regularly represented client. Also, the parties dispute the legal issue of whether rule 1.5 of the Rules of Professional Conduct is a bar to the collection of debt. The plaintiff contends that a violation of rule 1.5 of the Rules of Professional Conduct, though he does not concede one exists, does not legally proscribe the collection of debt owed to an attorney. These theories present just two of the possible bases on which the trial court could have decided that there was probable cause, and without an adequate record of the court's findings and legal reasoning, we cannot determine

---

[4] The court's memorandum of decision provides: "The [c]ourt has considered the testimony presented and concludes that an attorney-client relationship existed between the plaintiff and the defendants. The court finds that the defendants acknowledged owing the plaintiff money because of the legal services the plaintiff provided to the defendants. [The] [c]ourt concludes that there is probable cause that a judgment will enter in favor [of] the plaintiff as against the defendants in the amount of $1,065,000."

whether the court improperly found that the attorney-client relationship complied with rule 1.5 of the Rules of Professional Conduct or whether a fee agreement that violates rule 1.5 prevents collection of a debt incurred as a result of that agreement. We, therefore, decline to review the defendants' claim.

## II

Next, the defendants claim that the court improperly determined the amount of the prejudgment remedy. Specifically, the defendants claim that the plaintiff presented no evidence, such as time records, a retainer agreement or documentation of the legal work performed, in support of the compensation sought for the legal services rendered.

In order to grant a prejudgment remedy, the court must find probable cause as to both the likelihood that the plaintiff will prevail on the merits of his claim, as well as the amount requested to be secured. *TES Franchising, LLC* v. *Feldman,* supra, 286 Conn. 146. "[T]he amount of damages need not be determined with mathematical precision. . . . A fair and reasonable estimate of the likely potential damages is sufficient to support the entry of a prejudgment attachment. . . . Nevertheless, the plaintiff bears the burden of presenting evidence which affords a reasonable basis for measuring her loss." (Citations omitted; internal quotation marks omitted.) *Rafferty* v. *Noto Bros. Construction, LLC,* 68 Conn. App. 685, 693, 795 A.2d 1274 (2002).

In the present case, the defendants have failed to provide this court with an adequate record to review the trial court's determination of the amount of the prejudgment remedy. A motion for articulation is appropriate, in cases like this, in which the trial court's decision contains an ambiguity that must be clarified in order for this court to resolve a claimed error on appeal. *J.K. Scanlan Co.* v. *Construction Group, Inc.,* 80 Conn.

App. 345, 351–52, 835 A.2d 79 (2003). "[W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). The plaintiff's application requested that $1.4 million be attached. Alternatively, the defendants argue that the plaintiff has failed to present any supporting evidence of the legal work for which he alleged he is owed compensation. The court, in its memorandum of decision, however, granted the application for a prejudgment remedy in the amount of $1.065 million without supplying any analysis of how it reached that figure. A review of this claim would require this court to speculate as to how the court calculated the ordered amount, which we decline to do.

The judgment is affirmed.

In this opinion the other judges concurred.