JOSEPH KOPYLEC *v.* TOWN OF NORTH BRANFORD
(AC 30368)

DiPentima, C. J., and Lavine and Lavery, Js.

Argued October 25, 2010—officially released July 12, 2011

*Vincent T. McManus, Jr.*, for the appellant (plaintiff).

*John M. Gesmonde*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Joseph Kopylec, appeals from the judgment of the trial court denying his application to discharge a court order that the defendant, the town of North Branford (town), had recorded on the town land records. On appeal, the plaintiff claims[1] that the court improperly denied his application because the recorded order is an unenforceable judgment lien certificate.[2] The judgment is affirmed for the reasons set forth herein.

---

[1] We note that the plaintiff's brief fails to comply with Practice Book § 67-4 (d), which specifies in relevant part that the appellant's brief shall contain: "The argument, *divided under appropriate headings into as many parts as there are points to be presented,* with appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document. . . ." (Emphasis added.) Nevertheless, by interpreting the argument section of the plaintiff's brief, we have discerned what we believe are his principal claims on appeal.

[2] The plaintiff raises two additional claims on appeal. First, the plaintiff claims that the recorded order, which the town's attorney drafted and submitted to the trial court for its approval, is in excess of that authorized by the court, *Pittman, J.* Regardless of the plaintiff's understanding of Judge Pittman's intention, Judge Pittman signed the recorded order. Accordingly, the plaintiff's first claim is without merit.

Second, the plaintiff claims that the court improperly concluded that the town had the authority to record the order on the town land records pursuant to General Statutes § 8-12. We note that the recorded order readily could be characterized as a notice of zoning noncompliance. As such, the town had the authority to record the order on the land records acting either on its own initiative or in response to a court order. Section 8-12 was enacted to provide municipalities with a means of enforcing their zoning ordinances. *Greenfield* v. *Reynolds*, 122 Conn. App. 465, 470, 1 A.3d 125, cert. denied, 298 Conn. 922, 4 A.3d 1226 (2010). Accordingly, this court has determined "that a municipality may, under the authority of § 8-12, direct its zoning enforcement officer to record a notice on the land records as a means by

The following facts and procedural history are relevant to our resolution of the plaintiff's claims on appeal. This appeal is one of several in a long-standing and acrimonious zoning dispute concerning property located at 944 Totoket Road in North Branford (property). The factual situation presented in this appeal is more complex than usual in that it involves not only the judgment from which the plaintiff appeals, but also independent, but related, litigation to which the plaintiff's wife, Phyllis Kopylec, is a party, but the plaintiff is not (initial litigation).[3]

On October 4, 2001, the town issued a cease and desist order to the plaintiff pursuant to its authority under the town zoning regulations and General Statutes § 8-12. The order alleged that the property had been subjected to certain filling and grading activities in violation of the zoning regulations,[4] and ordered the plaintiff to discontinue and remedy those violations within ten days of his receipt of the order.[5] The plaintiff did not

which to enforce compliance with its zoning regulations." *Cabinet Realty, Inc.* v. *Planning & Zoning Commission,* 17 Conn. App. 344, 351, 552 A.2d 1218, cert. denied, 210 Conn. 813, 556 A.2d 610 (1989). Nevertheless, in light of the conclusion reached herein, we do not reach the merits of the plaintiff's claim.

[3] The plaintiff in the initial litigation, the zoning enforcement officer of the town of North Branford, filed a complaint naming Phyllis Kopylec, the plaintiff's wife, as the sole defendant. In the interest of simplicity, we will refer to Phyllis Kopylec by name and to both the zoning enforcement officer and the town of North Branford collectively as the town.

[4] The town alleged that the filling and grading activities occurring on the property violated §§ 43.2.3 and 43.4.7 of the town zoning regulations, respectively, and that the contours of the land had been altered so that runoff water that previously had collected in a small pond on the property was being diverted and flooding the property of adjacent landowners.

[5] The cease and desist order, which is addressed to the plaintiff, provides in relevant part: "Upon receipt of this [order], you have *10 days* to rectify this matter per . . . [§] 8-12 . . . . Failure to do so may result in legal action to obtain compliance. In addition, a fine of not less that [$100] per day or not more than [$250] per day may be imposed for continuation of filling on [the property]." (Emphasis in original.)

appeal from that order to the zoning board of appeals or the trial court.

In March, 2002, the town issued a stop work order pursuant to its authority under the zoning regulations and § 8-12.[6] The stop work order is identical in all material respects to the language of the October 4, 2001 cease and desist order, except that the former was served on Phyllis Kopylec, while the latter was served on the plaintiff. On April 12, 2002, the town commenced the initial litigation against Phyllis Kopylec in order to enforce its zoning regulations pursuant to its authority under the regulations and § 8-12. More specifically, the town filed a complaint and an application for a temporary injunction, alleging that Phyllis Kopylec had failed to comply with the March, 2002 stop work order. The complaint was served only on Phyllis Kopylec, although the plaintiff was a one-third owner of the property at that time.

On May 13, 2002, at the hearing on the town's application for a temporary injunction, Phyllis Kopylec acknowledged that she had reached an agreement with the town. The terms of the agreement were presented to the court, and the court canvassed Phyllis Kopylec to ensure that she was in accord with them. On June 5, 2002, a stipulation for judgment was filed with the court, wherein Phyllis Kopylec and the town agreed that a permanent injunction would enter against Phyllis Kopylec enjoining her, her servants, agents and employees from any additional filling or grading on the property.[7] The court, *Munro, J.,* approved the stipulation

---

[6] The stop work order, which is addressed to Phyllis Kopylec, provides in relevant part: "Pursuant to [§] 8-12 . . . and the authority vested in [the zoning enforcement officer] by the [z]oning [r]egulations . . . you are hereby ordered and directed to stop immediately illegal filling being done at [the property] . . . . Failure to stop this activity will result in legal action to obtain compliance. A [c]ease and [d]esist [o]rder was issued on October 4, 2001, regarding these same filling violations."

[7] Phyllis Kopylec also agreed to retain a licensed land surveyor and civil engineer to prepare an A-2 survey map by August 1, 2002, submit an applica-

and rendered judgment in accordance with it on June 13, 2002.

Thereafter, Phyllis Kopylec failed to comply with the terms of the stipulated judgment, and on May 21, 2003, the town filed a motion for contempt.[8] A hearing on the matter was held before Judge Munro on June 9, 2003, and another agreement was reached. The town's attorney presented the terms of the agreement to the court, specifically stating that "[Phyllis Kopylec] acknowledges that this order applies to not only herself, but to [the plaintiff, who] is actually acting on her behalf, and her son, as [her] agents . . . ." Although not present in court, Phyllis Kopylec, acting through counsel, agreed to a finding of contempt and again agreed to have an A-2 survey map prepared, devise a re-grading plan and apply for a temporary special use permit pursuant to the stipulated judgment. Phyllis Kopylec's attorney also informed the court that the plaintiff was present and had full authority to bind Phyllis Kopylec to the terms of the new agreement. The court noted that the plaintiff was a one-third owner of the property and canvassed him to ensure that he also agreed to the terms.[9] The court then found Phyllis Kopylec in

tion for a temporary special use permit for grading and filling, comply with the zoning board's decision with respect to this application and complete all necessary remediation to reestablish a "small pond" on the property to the satisfaction of the town.

[8] In a letter to Phyllis Kopylec's attorney, dated April 29, 2003, the plaintiff represented that Phyllis Kopylec was "not able to handle" her obligations under the stipulated judgment and that he held power of attorney to act on her behalf. The letter also requested that all correspondence relating to the stipulated judgment be addressed to the plaintiff.

[9] The record reveals the following colloquy between the court and the plaintiff:

"The Court: [Y]ou understand that as a property owner, even though you're not presently a named party, that you can be cited in and held as responsible for these things as Phyllis Kopylec?

"[The Plaintiff]: I do.

"The Court: And so therefore, do you agree with everything that was related on the record by [the town's attorney] as something you can comply with?

contempt of the stipulated judgment and approved as a court order new deadlines for completion of the remediation required under the terms of the stipulated judgment (contempt order).

Thereafter, Phyllis Kopylec failed to comply with the stipulated judgment and the contempt order, and the town filed a second motion for contempt on March 22, 2004.[10] In the meantime, on July 18, 2003, the plaintiff, Phyllis Kopylec and Rocklan Kopylec transferred, by quitclaim deed, all of their interests in the property to the plaintiff and Phyllis Kopylec. On November 9, 2004, the town filed a third motion for contempt, alleging that Phyllis Kopylec continued to be in violation of the stipulated judgment and the contempt order.[11]

The court, *Pittman, J.*, conducted a hearing on the town's third motion for contempt on November 22, 2004. During the hearing, Phyllis Kopylec admitted that she had failed to comply with the terms of the stipulated judgment and the contempt order, and represented that she financially was unable to do so. The town then proposed that, in lieu of entering another finding of contempt, the court issue an order that would enable the town to enter the property and perform the remediation in exchange for an equity lien on the property to secure payment for its expenses. The town's attorney

"[The Plaintiff]: It is.

"The Court: All right. And you understand that if you fail to comply, if the matter comes to court for further findings in contempt you'll be cited in as a party and be facing contempt of court? You understand that?

"[The Plaintiff]: Yeah.

"The Court: All right. So you can do all of these things, right?

"[The Plaintiff]: As long as I'm not hospitalized before."

[10] The record does not indicate what, if any, action was taken on this motion.

[11] The town based its motion for contempt upon Phyllis Kopylec's failure to (1) prepare an A-2 survey map, (2) submit an application for a temporary special use permit, (3) submit a re-grading plan and (4) take any steps toward remediation. See footnote 7 of this opinion.

stated that the proposed order would enable the town to enforce its zoning regulations, while recognizing that the Kopylecs were experiencing financial difficulties. Phyllis Kopylec then asked the court whether she and the plaintiff would lose control of the property under the terms of the proposed order. Judge Pittman responded that "[the lien] would . . . be a debt that's due. The town at the moment is not expressing any desire to foreclose [the] lien . . . ." Phyllis Kopylec then asked the court whether it could guarantee that she and the plaintiff would retain life use of the property. Judge Pittman responded that "[the court did not] want to be in a position of guaranteeing to you that nobody [would] attempt to foreclose the lien [and that the court did not] know of any other way to enforce the [proposed] court order."

At the conclusion of the hearing, the court accepted the town's proposal. In doing so, Judge Pittman stated in relevant part: "I am entering an order that the [town] be entitled to enter upon the property and undertake the necessary remediation and that the reasonable and necessary charges for the remediation be charged to [Phyllis Kopylec] . . . in the form of a lien against the property." Judge Pittman then requested that the town's attorney draft the proposed order and submit it to the court for its approval. The town's attorney drafted the order and filed it with the court on July 29, 2005. Thereafter, the court approved the order and the town recorded it on the land records on August 8, 2005 (recorded order).[12] That order is the basis of the present litigation. The order was never appealed.

---

[12] The recorded order states, in relevant part: "The court, in lieu of any further finding of contempt, orders that the [town] be entitled to enter upon the subject property and undertake the necessary remediation of it pursuant to this court's judgment of June 13, 2002, and that the reasonable and necessary charges for such remediation, including all professional fees, permit fees, A-2 survey map fees, and labor costs for the regrading of the subject property, including the restoration of a small pond thereon, and any and all other work or services necessary and reasonable in association with

In the meantime, on January 20, 2005, Phyllis Kopylec filed a motion to open judgment and dismiss the initial litigation, claiming that the plaintiff was an indispensable party and that the town's failure to join him deprived the court of subject matter jurisdiction. After determining that the plaintiff was an indispensable party, the court denied the motion to open judgment on July 29, 2005. Shortly thereafter, in a letter dated August 4, 2005, the plaintiff informed the town that he, as a part owner of the property, denied the town permission to enter the property and that any attempt to enter and conduct the necessary remediation would "be considered a trespass which shall be repelled by all reasonable means at [his] disposal."

Between August 5 and September 12, 2005, Phyllis Kopylec and the town filed several motions, including a motion to stay the proceedings.[13] Before a hearing was held on those motions, however, Phyllis Kopylec conveyed her interest in the property to the plaintiff by way of a quitclaim deed, making him the sole owner of the property. The plaintiff recorded the deed on the land records on September 8, 2005. A hearing was held on September 19, 2005, at which the court recognized that the town's failure to cite the plaintiff into the initial

such task, shall be charged to [Phyllis Kopylec] as a debt due and owing from [her] to the [town], said debt to be secured by the recordation of this order on the land records of the [town]. The effect of this order, and the intent of this court, is that this order shall constitute a lien on the subject property, which may be foreclosed by the [town] upon [Phyllis Kopylec's] failure to pay said debt within thirty (30) days after its presentation for payment to [Phyllis Kopylec] or to [her] attorney in the same manner as is provided for the foreclosure of judgment liens. The amount due and owing shall be established by way of affidavit, with appropriate attached statement or receipts, to be presented as an exhibit in any foreclosure action commenced by the [town]. . . ."

[13] The record shows that on August 26, 2005, Phyllis Kopylec filed a motion to stay the proceedings and noticed a deposition to the town. In response, on September 1, 2005, the town filed a motion for a protective order and a motion to quash and an objection to production request.

litigation continued to make the enforcement of the court's orders problematic. The court determined that allowing the town "to go on this property on some theory that [the plaintiff] is bound by a judgment in which he was never a named defendant is not the best way to proceed." The court concluded that, if the town wanted to enforce the court's prior orders, the town should first obtain judgment against the plaintiff as he was an owner of the property at the time the stipulated judgment was entered. Accordingly, the court issued an order finding the plaintiff "a necessary and indispensable party to the full resolution of the dispute over the use of the property" and stayed all "substantive proceedings related to the enforcement of the previous orders of [the] court until such time as [the plaintiff] is joined as a party to [the initial litigation]." The plaintiff, however, was never joined in the initial litigation as a party defendant.

On November 27, 2006, the plaintiff commenced the present litigation by filing with the court an application to remove the unappealed order from the land records. The plaintiff argued that the court had terminated the town's authority to enter the property and perform the remediation when it had stayed all proceedings related to the enforcement of its prior orders. The town filed its objection to the plaintiff's application on February 23, 2007.

In its memorandum of decision denying the plaintiff's application to discharge the order from the land records, the court, *Corradino, J.*, found that the order secured an enforceable lien. In rendering its judgment, the court acknowledged that Judge Pittman had stayed all substantive proceedings in the initial litigation until such time as the plaintiff was joined as a party defendant therein. The court determined, however, that "there is no indication that [Judge Pittman] intended to lift the

stay, her order merely meant [that remedial] actions could not take place." This appeal followed.

The plaintiff argues that the trial court improperly denied his application to discharge the order from the land records on the ground that it is unenforceable against third parties. The plaintiff's argument apparently is premised on his construction of the recorded order as a judgment lien certificate. Based on this construction, the plaintiff argues that the order does not provide third parties with adequate notice of the existence of a judgment lien on the property, thereby failing to satisfy the applicable recording statute.[14] The town responds that the plaintiff has construed the order too narrowly. We agree with the town.[15]

[14] Insofar as the plaintiff challenges the validity of the order itself, as opposed to the enforceability of the order as it is recorded on the land records, the present litigation could readily be viewed as an impermissible collateral attack on an underlying zoning decision. On October 4, 2001, the plaintiff was issued a cease and desist order that is identical in all material respects to the stop work order that the town later served on Phyllis Kopylec, thereby giving rise to the initial litigation. Our review of the record reveals that the plaintiff did not appeal from the cease and desist order to the zoning board of appeals within the statutory time period. See General Statutes § 8-7. As a result, the plaintiff cannot successfully appeal from that order to the trial court. See *Gangemi* v. *Zoning Board of Appeals*, 255 Conn. 143, 161, 763 A.2d 1011 (2001) (*Sullivan, J.*, dissenting). Thus, the cease and desist order, which requires that the plaintiff remediate the property in order to bring it into compliance with the zoning regulations, remains in effect. Accordingly, we conclude that an attack on the validity of the order presently at issue would amount to nothing more than an attempt to avoid the effect of the cease and desist order, and thereby constitute an impermissible collateral attack on a zoning decision. See *Lallier* v. *Zoning Board of Appeals*, 119 Conn. App. 71, 78–79, 986 A.2d 343, cert. denied, 295 Conn. 914, 990 A.2d 345 (2010). Since the court order was never appealed, this litigation is also a collateral attack on the unappealed court order.

[15] Although we reject the plaintiff's construction of the order, we agree that the order, as recorded on the land records, is unenforceable as a judgment lien certificate. General Statutes § 52-380a (a), which governs the recordation of judgment liens, provides: "A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney or personal representative, con-

At the outset, we note that our analysis of the plaintiff's claim requires us to construe the order. "Because [t]he construction of [an order or] judgment is a question of law for the court . . . our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *State* v. *Denya*, 294 Conn. 516, 529, 986 A.2d 260 (2010).

We begin our analysis with the text of the order. Although the term "lien" is used throughout the text, the term "judgment lien" is used only once. The order provides in relevant part: "The effect of this order, and

taining: (1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and *the original amount of the money judgment and the amount due thereon*; and (2) a description, which need not be by metes and bounds, of the real property on which a lien is to be placed, and a statement that the lien has been placed on such property." (Emphasis added.)

It is undisputed in the present case that the recorded order does not set forth the original amount of a money judgment and the amount due thereon. Our Supreme Court has determined, however, that "the omission of the judgment amount from the lien certificate is not a sufficient reason to invalidate the lien where it is challenged by a third party who had sufficient information available on the face of the lien certificate to discover the amount of the judgment secured by the lien." *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 704, 960 A.2d 563 (2008). Nevertheless, the town has not performed any remediation on the property and thus has not established "[t]he amount due and owing." It is therefore impossible for a third party to verify independently the amount of the judgment by examining the available judicial records. Accordingly, the recorded order is unenforceable as a judgment lien certificate.

the intent of [the trial] court, is that this order shall constitute a lien on the subject property, which may be foreclosed by the [town] upon [Phyllis Kopylec's] failure to pay said debt . . . within thirty (30) days after its presentation for payment to [her] or to [her] attorney in the same manner as provided for the foreclosure of judgment liens." Thus, the term "judgment lien" is used not to describe the nature of the encumbrance, but to establish the means by which the town may obtain satisfaction of an obligation.

We next turn to the circumstances in which the order was issued. As mentioned previously, Phyllis Kopylec entered into a stipulated judgment with the town during the course of the initial litigation. The stipulated judgment contained a number of injunctive provisions, which required Phyllis Kopylec to perform certain remediation in order to bring the property into compliance with the zoning regulations. The town subsequently filed its first motion for contempt, in which it alleged that Phyllis Kopylec had failed to perform the remediation that she had agreed to perform under the terms of the stipulated judgment. Following a hearing, the court found Phyllis Kopylec in contempt of the stipulated judgment and the plaintiff herein, acting in his capacity as Phyllis Kopylec's attorney in fact, agreed to complete the remediation by certain deadlines. Thereafter, Phyllis Kopylec again failed to perform the remediation, prompting the town to file two additional motions for contempt. In its third motion for contempt, the town requested permission to perform the remediation in exchange for a lien on the property. During the hearing on that motion, Phyllis Kopylec admitted that she was unable to perform the remediation and represented that she was experiencing financial difficulties. The town reiterated its request that the court, in lieu of entering another finding of contempt, issue an order that would enable the town to perform the remediation in exchange

for "some sort of equity lien on the property to reimburse [the town] for [its] expenses." The court then granted the town's request, stating in relevant part: "There is no dispute . . . about the underlying facts concerning the previous court order and the fact that that court order has not been complied with. I am going to enter an order therefore that the [town] be allowed to enter upon the property and perform the necessary remediation pursuant to the court order."

After examining the text of the order and the circumstances in which it emerged, we conclude that the encumbrance described within its text is an inchoate[16] equitable lien. The encumbrance fits our Supreme Court's long-standing description of an equitable lien: "An equitable lien creates merely a charge upon the property and when the person entitled to it is not in possession of that property, he has no right to obtain possession from another unless by virtue of some authority to do so expressly granted to him; his remedy to enforce the lien is by a proceeding in equity to bring about its sale and the application of the proceeds to the satisfaction of the obligation secured, or, in some other manner, by order of the court, to make the property available for the discharge of that debt." *Hansel v. Hartford-Connecticut Trust Co.*, 133 Conn. 181, 194, 49 A.2d 666 (1946). At the time that this appeal was filed, the town was not in possession of the property and the order expressly provides that the town may

---

[16] " 'Choate' liens are those that are certain as to the amount, the identity of the lienholder, and the identity of the property, and a lien becomes choate when nothing more needs to be done to perfect it and make it enforceable. In other words, to make a lien choate, the lienor must either have obtained a judgment on the lien or it must be enforceable against property by a summary proceeding.

"On the other hand, an 'inchoate lien' is one that attaches to property by operation of a statute or the entry of a judgment, but cannot be enforced until it becomes a consummate lien by the appropriate statutory or judicial process." 51 Am. Jur. 2d 125, Liens § 8 (2000).

only obtain satisfaction of its obligation by way of a foreclosure action, an equitable proceeding. See *Rockville Bank* v. *Victory Outreach Ministries, Inc.*, 125 Conn. App. 1, 6, 6 A.3d 177 (2010) (foreclosure is equitable proceeding). Moreover, the transcript of the hearing on the town's third motion for contempt reveals that the court intended to provide the town with "a method to remediate [the property] and force compliance with the court's order that the remediation occur." In doing so, the court was exercising its equitable powers to enforce its prior contempt order. Cf. *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 243–44, 796 A.2d 1164 (2002). Accordingly, we conclude that the challenged order is an equitable remedy and that the lien described therein is an equitable lien.

Having determined that the encumbrance presently at issue is an equitable lien, we must now determine whether the recorded order provides adequate notice to third parties of the existence of an encumbrance on the property. Our Supreme Court has explained that "the purpose of the land records is to give constructive notice to the world of instruments recorded therein . . . ." *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 701, 960 A.2d 563 (2008). Moreover, we note that "[i]t has always been the policy of our law that the land records should be the authentic oracle of title on which a bona fide purchaser or attaching creditor might safely rely." (Internal quotation marks omitted.) *Lucas* v. *Deutsche Bank National Trust Co.*, 103 Conn. App. 762, 768, 931 A.2d 378, cert. denied, 284 Conn. 934, 935 A.2d 151 (2007). Accordingly, the holder of an interest in real property typically must file a notice on the land records in order to prevent his interest from being lost in the event that the property is transferred to a bona fide purchaser for value. Id., 768–69.

The adequacy of the notice provided by a lien certificate varies according to the type of lien that the certificate is intended to secure. See *PNC Bank, N.A.* v. *Kelepecz,* supra, 289 Conn. 701. The recordation of certain types of liens is governed by statute, and, consequently, many lien certificates must incorporate certain statutorily specified information. See, e.g., General Statutes § 49-34 (mechanic's liens); General Statutes § 52-380a (judgment liens). The appellate courts of this state have had occasion to examine statutory lien certificates in order to ascertain whether they provide adequate notice to third parties. See, e.g., *PNC Bank, N.A.* v. *Kelepecz,* supra, 701–702. These cases are inapposite, however, as we have concluded that the lien presently at issue is not a statutory lien.

Although we can find no Connecticut case law directly on point, we find a review of the law governing the recordation of mortgages to be instructive. "It is well established that the recordation of a valid mortgage gives constructive notice to third persons if the record sufficiently discloses the real nature of the transaction so that the third party claimant, exercising common prudence and ordinary diligence, can ascertain the extent of the encumbrance. . . .

"The purpose of the notice requirement is to prevent subsequent third parties from being defrauded or otherwise misled by inaccuracies and omissions in the record that conceal the true nature of the secured obligation. . . . Errors and omissions in the recorded mortgage that would not mislead a title searcher as to the true nature of the secured obligation do not affect the validity of the mortgage against third parties." (Citations omitted; internal quotation marks omitted.) Id.

The recorded order provides a great deal of information concerning the nature and extent of the encumbrance presently at issue. The order explicitly provides

that it is intended to serve as a lien in order to secure reimbursement for the town's expenses in performing certain remediation, which the order describes in detail. The order also specifies that it is to be enforced by way of a foreclosure action. Specifically, the order provides that it "may be foreclosed . . . in the same manner as is provided for the foreclosure of judgment liens [and that] [t]he amount due and owing shall be established by way of affidavit, with appropriate attached statement or receipts . . . ."

Although the order does not specify whether the town has performed the remediation or initiated a foreclosure action, we conclude that the order sufficiently discloses the nature of the encumbrance on the property so that a third party, exercising common prudence and ordinary diligence, can readily ascertain the extent of that encumbrance. The order contemplates that the property will be the subject of further litigation, namely, a foreclosure action. A title searcher would therefore be required to search outside of the chain of title in order to ascertain the status of any such action. We note that it is customary in this state for a title searcher to examine records outside of the chain of title. See Connecticut Bar Association, Connecticut Standards of Title (1999), standard 1.1 (purpose of title examination is to secure marketable title, even if marketability cannot be determined from land records); standard 2.3 (title searcher required to search outside chain of title to verify existence or absence of certain liens).[17] Thus, in certain circumstances, a title searcher has an obligation to examine judicial records or municipal zoning records in order to determine whether a particular title is marketable.

---

[17] "[E]ven though the standards of title of the Connecticut Bar Association are not controlling, contractually or otherwise, they do establish the custom in the legal community." *Porter* v. *Morrill*, 108 Conn. App. 652, 662, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

In the present case, the recorded order sets forth the names of the parties to the initial litigation, the docket number of that litigation, the court in which the order was issued, the date on which it was issued, the address of the subject property and a description of that property by metes and bounds. A title searcher, armed with the foregoing information, readily would determine that the property was the subject of a judicial proceeding. Accordingly, the title searcher would be required to examine the available judicial records in order to ensure that Phyllis Kopylec possessed marketable title to the property. Moreover, the title searcher would then be required to examine the available zoning records, as the available judicial records reveal that the property was the subject of an ongoing zoning dispute.

In light of the foregoing, we conclude that the order provides adequate notice to third parties of the extent of the encumbrance because a third party, armed with the information available on the face of the recorded order, would be able to ascertain the extent of the encumbrance.[18] Accordingly, we conclude that the

[18] The plaintiff appears to argue in his brief that it would be improper to impute constructive notice of the order to him because he failed to examine the land records before acquiring Phyllis Kopylec's interest in the property. It is well established, however, that "[e]very person who takes a conveyance of an interest in real estate is conclusively presumed to know those facts which are apparent upon the land records concerning the chain of title of the property described in the conveyance . . . . The law implies notice on the ground that it is conclusively presumed that a person will not purchase an interest in a piece of land without examining the condition of the record. Such an act would be required by common prudence." (Citation omitted; internal quotation marks omitted.) *Lee* v. *Duncan*, 88 Conn. App. 319, 326, 870 A.2d 1, cert. denied, 274 Conn. 902, 876 A.2d 12 (2005).

We also note that although the plaintiff is seeking equity, he comes to this court with unclean hands. "The doctrine of unclean hands holds that one who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands . . . and must therefore show that his conduct has been fair, equitable and honest as to the particular controversy in issue." (Citation omitted; internal quotation marks omitted.) *Barasso* v. *Rear Still Hill Road, LLC*, 81 Conn. App. 798, 806 n.4, 842 A.2d 1134 (2004). As mentioned previously in footnote 14 of this opinion, the

plaintiff took title to Phyllis Kopylec's interest in the property subject to the inchoate equitable lien described within the text of the recorded order.[19]

Although we conclude that the recorded order secures an equitable lien that is enforceable against the plaintiff, we note that the town presently does not have the authority to perform the remediation described therein. As we previously have mentioned, Judge Pittman has stayed all proceedings related to the enforcement of the order until such time as the plaintiff herein is joined as a party in the initial litigation. The trial court has determined that the plaintiff herein is a necessary and indispensable party to the full resolution of the dispute. Nevertheless, as of the date of oral argument in the present appeal, the town still had not cited the plaintiff into the initial litigation. This matter would have been brought to a conclusion long ago with less court time if the town brought in all necessary and indispensable parties in the first place, and if not then, at least when Judge Pittman told the town that the plaintiff was a necessary and indispensable party to the full resolution of the dispute and stayed all proceedings until the plaintiff was cited in. We emphasize that the

plaintiff was issued a cease and desist order that is identical in all material respects to the stop work order that the town later served on Phyllis Kopylec. Accordingly, the plaintiff had constructive knowledge of the zoning problems affecting the property. Moreover, we note that because the plaintiff did not appeal from the cease and desist order within the time period set forth in § 8-7, that order remains in effect. See *Gangemi* v. *Zoning Board of Appeals,* supra, 255 Conn. 161.

[19] The dissent argues that neither party has raised the issue of whether the recorded order secures an equitable lien, and that we therefore have resolved the appeal on the basis of an issue that is not properly before us. We note that the town addresses the recorded order as both a lien certificate and an equitable remedy fashioned in response to a motion for contempt. In its brief, the town argues that the court approved the recorded order so as to enable the town to perform the necessary remediation and thereby enforce its zoning regulations, the stipulated judgment and the contempt order. Accordingly, the town's argument on appeal can only be understood as resting upon the notion that the recorded order secures an equitable lien.

plaintiff must be joined in the initial litigation if there is to be a complete disposition of this dispute, which began in 2001.

The judgment is affirmed.

In this opinion DiPENTIMA, C. J., concurred.

LAVINE, J., dissenting. I respectfully dissent from the majority opinion, which affirms the judgment of the trial court on a ground not raised by either of the parties. See footnote 4 of this dissent. To date, the defendant, the town of North Branford (town), has not remediated the property as ordered by the court, and therefore it has incurred no debt. I would reverse the judgment of the trial court and order the subject lien discharged.

On appeal, the plaintiff, Joseph Kopylec, claims the court, *Corradino, J.*, erred when it failed to grant his application to discharge the lien on the subject property. More specifically, the plaintiff claims that (1) the lien (order 109) as drafted and filed by counsel for the town is in excess of that authorized by the court, *Pittman, J.*, on November 22, 2004, and (2) order 109 is in excess of the municipal enforcement powers of General Statutes § 8-12. I agree with both of the plaintiff's claims.

I agree with the underlying facts and procedural history recited by the majority. The facts that need to be highlighted, however, are Judge Pittman's order of November 22, 2004, and order 109, entitled "ORDER RE# 109," that was filed on the town land records. On November 22, 2004, in the case of *Labulis* v. *Kopylec*, Superior Court, judicial district of New Haven, Docket No. CV-02-0463204-S, Judge Pittman ordered: "[T]here's a court order that there be remediation; it hasn't happened. I am entering an order that the [town] be entitled to enter upon the property and undertake the necessary

remediation and that the reasonable and necessary charges for the remediation be charged to [Phyllis Kopylec] and may be lodged in the form of a lien against the property." The court asked the defendant's counsel to draft the necessary order and informed Phyllis Kopylec that she did not need to return to court unless there was further dispute about the matter. Eight months later on July 29, 2005, although the remedial work on the property had not been completed, the defendant's counsel filed order 109 and Judge Pittman signed it. Thereafter, the defendant's counsel filed order 109 on the town land records before any remedial work had been performed.[1] At the present time, the court's November 22, 2004 order has been stayed until such time as the plaintiff is joined as a party defendant in *Labulis* v. *Kopylec*, supra, Superior Court, Docket No. CV-02-0463204-S. The record does not indicate that the stay has been recorded on the land records.

On November 27, 2006, the plaintiff filed an application to discharge the lien on the subject property. In

---

[1] The order states in relevant part: "The court, in lieu of any further finding of contempt, orders that the [town] be entitled to enter upon the subject property and undertake the necessary remediation of it pursuant to this court's judgment of June 13, 2002, and that the reasonable and necessary charges for such remediation . . . and any and all other work or services necessary and reasonable in association with such task, shall be charged to [Phyllis Kopylec] as a debt due and owing from [Phyllis Kopylec] to the [town], said debt to be secured by the recordation of this order on the land records of the Town of North Branford in which the subject property is situated. The effect of this order, and the intent of this court, is that this order shall constitute a lien on the subject property, which may be foreclosed by the [town] upon [Phyllis Kopylec's] failure to pay said debt within thirty (30) days after its presentation for payment to [her] or to [her] attorney in the same manner as is provided for the foreclosure of judgment liens. The amount due and owing shall be established by way of affidavit, with appropriate attached statement or receipts, to be presented as an exhibit in any foreclosure action commenced by the [town]. Similarly, any dispute by [Phyllis Kopylec] as to the reasonableness or necessity of any charges may be raised in the context of such foreclosure hearing. . . ." Importantly, order 109 does not include the amount of the lien or the amount due and owing.

his memorandum in support of the application to discharge, the plaintiff cited General Statutes §§ 49-13,[2] 49-51 and 49-59.[3] In his memorandum, the plaintiff argued that Judge Pittman's order, issued from the bench, did not authorize the filing of a lien until a debt was incurred. It gave the defendant authority to incur reasonable and necessary charges to remediate the subject property, create a debt and file a lien on the basis of the debt. Significantly, the plaintiff noted that order 109 itself states "all other work or services necessary and reasonable in association with such task, *shall be charged to [Phyllis Kopylec] as a debt due and owing from [Phyllis Kopylec] to the [town] . . . said debt* to be secured by the recordation of this order on the land records . . . ." (Emphasis added.) The plaintiff argued that, on the face of the order, Judge Pittman did not authorize that order 109 be recorded without the existence of an incurred debt. Judge Corradino denied the plaintiff's application to discharge the lien. This appeal followed.

I

The plaintiff's first claim is that Judge Corradino improperly denied his application to discharge the lien because order 109 exceeds the scope of Judge Pittman's November 22, 2004 order. Moreover, the plaintiff argues that order 109 is invalid because it fails to comply with General Statutes § 52-380a. I agree with the plaintiff.

"[T]he construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may

---

[2] General Statutes § 49-13 is an enabling statute for the discharge of an ineffective lien, among others.

[3] General Statutes § 49-59 concerns the discharge of liens and penalty for failure to discharge.

involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as that which is expressed. . . . In doing so, it assists a reviewing court to keep in mind the theory on which the case was tried and on which the trial court decided it." (Citations omitted; internal quotation marks omitted.) *Steiner* v. *Middlesex Mutual Assurance Co.*, 44 Conn. App. 415, 428, 689 A.2d 1154 (1997); see also *Maguire* v. *Maguire*, 222 Conn. 32, 46, 608 A.2d 79 (1992) (construing court order). The plenary standard applies to questions of law. *State* v. *Jenkins*, 298 Conn. 209, 222, 3 A.3d 806 (2010).

On the basis of my review of the order Judge Pittman articulated on November 22, 2004, and order 109, I conclude that they are two distinct things with separate purposes. Phyllis Kopylec failed or was unable to comply with her obligations under the stipulated judgment. In lieu of further contempt citations against Phyllis Kopylec, the court issued an order to enforce the stipulated judgment. To enforce the judgment, the court ordered the defendant to perform the required remediation of the subject land. Order 109, which was placed on the town land records, does not achieve that goal. Moreover, given the language of the court's order, the town filed the lien prematurely. As the plaintiff pointed out in his application for discharge of lien, "[a]s of the date of the stay, the town of North Branford has expended no sums for the 'reasonable and necessary charges for such remediation . . . .' " Until the town completed the remediation, no lien should have been filed on the land records until it knew the cost of the remediation. See General Statutes §§ 52-285 and 52-380a (1). In fact, under the terms of the stay, the remedial work may never be completed. For these reasons, I conclude that the court's oral order to enforce the stipulated judgment and order 109 that appears on the town land records are at odds. I conclude therefore that order

109 exceeds the scope of the November 22, 2004 court order.

Moreover, the plaintiff argues that order 109 is not a valid lien. "Whether a judgment lien is valid generally involves a mixed question of fact and law." *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 697, 960 A.2d 563 (2008). In this case, the parties do not dispute the underlying facts. The issue is whether order 109 conforms to the statutory requirements for judgment liens codified in § 52-380a. Construction of a statute and its applicability to a particular set of facts requires plenary review. *Wright* v. *Teamsters Local 559*, 123 Conn. App. 1, 5, 1 A.3d 207 (2010).

General Statutes § 52-380a (a) provides in relevant part: "[a] judgment lien, securing the unpaid amount of any money judgment . . . may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate, signed by the judgment creditor or his attorney . . . containing: (1) A statement of the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the judgment was rendered, and the original *amount of the money judgment* and the amount due thereon; and (2) a description . . . of the real property on which a lien is to be placed . . . ." (Emphasis added.)

There is no question that order 109, which was filed on the town land records, does *not* set forth the original amount of the money judgment. Indeed, as of yet, no debt has been incurred. In denying the plaintiff's application for discharge of the lien, Judge Corradino concluded that the failure to include the amount of the money judgment "does not invalidate the lien generally or by its own terms . . . ." In *PNC Bank, N.A.* v. *Kelepecz*, supra, 289 Conn. 692, our Supreme Court considered whether a judgment lien is valid "when . . . the

judgment lien certificate fails to set forth the original amount of the money judgment secured by the lien as required by . . . § 52-380a (a)." Id., 694. To resolve the issue, the court had to determine whether the judgment lien at issue complied with § 52-380a.

There was no dispute in the *PNC Bank, N.A.*, case that the lien certificate did not contain the original amount of the judgment. Id., 699. "A judgment lien is based on a judicial determination of the amount of the debt owed by the debtor to the creditor and can be independently verified by checking judicial records." Id., 701. In *PNC Bank, N.A.*, the lien certificate contained the names and last known addresses of the judgment creditor and debtor, the court, and its street address, in which the judgment was rendered and the date of the judgment. Id., 702. Our Supreme Court concluded that "with this information in hand, a party acting with common prudence and ordinary diligence would be able to ascertain the original amount of the judgment secured by the lien, most likely by going to the courthouse identified in the lien and obtaining the information from the file in the clerk's office"; id.; and therefore "the omission of the judgment amount from the lien certificate is not a sufficient reason to invalidate the lien where it is challenged by a third party who had sufficient information available on the face of the lien certificate to discover the amount of the judgment secured by the lien." Id., 704.

Unlike the judgment lien at issue in *PNC Bank, N.A.*, order 109 clearly fails to provide a third party with sufficient information to discover the amount of the money judgment and the amount due through the exercise of common prudence and ordinary diligence. Order 109 does not contain the names and last known addresses of the judgment creditor and debtor, the amount of a money judgment, the date it was rendered and the amount due; and also it is not signed by the

judgment creditor or its attorney. Order 109, therefore, fails to comply with the judgment lien statute, § 52-380a. Moreover, order 109 states that "[t]he amount due and owing shall be established by way of affidavit, with appropriate attached statement or receipts . . . ." It is undisputed that the defendant has not performed any remedial work on the property, and thus has not established "[t]he amount due and owing." It is therefore impossible for a third party to verify independently the amount of the judgment by examining the available judicial records. I therefore conclude that order 109 is not a valid judgment lien on the town land records.[4]

[4] The majority also concludes that order 109 is not a valid judgment lien. See footnote 15 of the majority opinion. I disagree, however, that order 109 has any validity and conclude it should be discharged. Until the stay is lifted and the defendant performs the remedial work ordered, which may never occur, there is no basis for the lien.

Although the majority concludes that order 109 is not a valid judgment lien, it concludes that it is an inchoate lien. It describes an inchoate lien as "one that attaches to property by operation of a statute or the entry of a judgment . . . ." 51 Am. Jur. 2d 125, Liens § 8 (2000). The majority, however, fails to cite the statute or judgment that supports its contention that order 109 is an inchoate lien. The majority also describes order 109 as an equitable lien. "An equitable lien creates merely a charge upon the property and when the person entitled to it is not in possession of that property . . . his remedy to enforce the lien is by a proceeding in equity to bring about its sale and the application of the proceeds to the satisfaction of the obligation secured . . . ." *Hansel* v. *Hartford-Connecticut Trust Co.*, 133 Conn. 181, 194, 49 A.2d 666 (1946). Again, there is no debt owed the defendant because it has not remediated the subject property. There can, therefore, be no charge against the property. Without an amount certain, there can be no lien on real property. Unlike order 109, a prejudgment remedy is an example of an inchoate lien.

"In Connecticut, a prejudgment attachment is a provisional remedy afforded to a claimant to secure satisfaction of a judgment in the future. . . . The right to a prejudgment attachment in Connecticut is statutory. General Statutes § 52-285 . . . . The requirements for an attachment of real property include recordation of the certificate of attachment on the land records. . . . Upon recordation, a claimant obtains an inchoate lien until the time of the judgment." (Citations omitted.) *Shawmut Bank* v. *Brooks Development Corp.*, 46 Conn. App. 399, 410, 699 A.2d 283 (1997).

General Statutes § 52-285 provides in relevant part: "Real estate shall be attached by the officer leaving in the office of the town clerk of the town in which it is situated a certificate that he has made such attachment . . . .

## II

The plaintiff also claims that Judge Corradino improperly denied his application to discharge order 109 as it is in excess of the municipal enforcement powers granted by § 8-12. In denying the plaintiff's application to discharge order 109, Judge Corradino concluded that Judge Pittman had the right to order the lien placed on the land records given the broad language of § 8-12 and *Cabinet Realty, Inc.* v. *Planning & Zoning Commission*, 17 Conn. App. 344, 552 A.2d 1218, cert. denied, 210 Conn. 813, 556 A.2d 610 (1989). I disagree with the court's conclusion.[5]

General Statutes § 8-12 provides in relevant part: "If any building or structure has been erected . . . or land has been used, in violation of any provision of this chapter . . . ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action . . . to prevent such unlawful . . . alteration . . . or to restrain . . . or abate such violation . . . or to prevent any illegal act . . . or use in or about such premises. Such regulations shall be enforced by

The certificate shall . . . describe the land attached with reasonable certainty and shall specify the parties to the suit, the authority issuing the writ, the court to which the process is returnable and *the amount of damages claimed* . . . ." (Emphasis added.)

"The trial court may grant a prejudgment remedy upon a finding that there is probable cause that a judgment *in the amount of the prejudgment remedy sought,* or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . ." (Emphasis added; internal quotation marks omitted.) *Caciopoli* v. *Howell*, 124 Conn. App. 273, 277, 5 A.3d 509 (2010). I conclude that no lien may be placed on real property, choate or inchoate, unless there is an amount certain named in the lien certificate.

[5] Although only one ground is needed to reverse the judgment of the trial court, I address the plaintiff's second claim as an alternate basis for reversal, should a petition for certification to appeal filed in our Supreme Court be granted. See Practice Book § 84-11.

the officer . . . who shall be authorized to cause any . . . premises to be inspected . . . and . . . when the violation involves grading of land, the removal of earth or soil erosion and sediment control, to issue, in writing, a cease and desist order to be effective immediately. . . . Any person who, having been served with . . . a cease and desist order with respect to a violation involving grading of land, removal of earth or soil erosion and sediment control, fails to comply with such order immediately . . . shall be subject to a civil penalty not to exceed two thousand five hundred dollars, payable to the treasurer of the municipality. . . ."

The case of *Cabinet Realty, Inc.*, is inapposite to the facts here. In that case, the zoning commission found that the condominiums under construction did not conform to the site plan. *Cabinet Realty, Inc.* v. *Planning & Zoning Commission*, supra, 17 Conn. App. 346. The commission directed the zoning officer to record a notice of its findings on the town land records.[6] Id., 347. In resolving the appeal in the context of a challenge to jury instructions, this court stated that "a municipality may, under the authority of § 8-12, direct its zoning enforcement officer to record a notice on the land records as a means by which to enforce compliance with its zoning regulations. Such a notice on the land records will alert prospective purchasers to zoning problems affecting the property and may discourage purchasers from buying property when a builder has not complied with the zoning regulations." Id., 351. In the case before this court now, order 109 does not put anyone on notice of the zoning violation at issue but would lead a person searching the land records to believe that there is an unspecified lien on the property,

---

[6] The commission directed the zoning enforcement officer "to prevent the occupancy of the . . . units by recording a notice of the commission's conclusions on the land records." *Cabinet Realty, Inc.* v. *Planning & Zoning Commission*, supra, 17 Conn. App. 347.

which, as I have concluded in part I of this dissent, is invalid. Moreover, § 8-12 details the powers of a zoning board and court with regard to zoning violations and sets forth the penalties that may be imposed for illegal grading of land. Order 109 is in excess of the statute.

Notwithstanding the majority's desire to resolve this case, I do not think it should do so by resorting to grounds not raised, or briefed, by the parties. For the foregoing reasons, I would reverse the judgment and remand the case to the trial court with direction to grant the application for discharge of the lien.